Brockenbrough, J.
I think it very clear, that the letter of attorney conferred no other authority than that of subscribing the names of the defendants, either as makers or indorsers, to any negotiable note or paper, for the purpose of getting the same discounted at either of the banks specified in the letter, and when the same note or paper should come to maturity, of renewing the same to ties quoties, so that the defendants were not to be bound at any one and the same time for a greater sum than 3000 dollars. The power to have the note or paper discounted at either of the banks, repudiates the idea of having notes negotiated at all of the banks, or at more than one bank at the same time, whilst the renew-ability of the note, manifests the intention of the principals to be, that the accommodation was to be granted to the attorney by a bank, and not by individuals. To allow the attorney to make purchases from individuals, would place his conduct beyond the control of the principals, and thereby endanger their safety. The construction given to the power by the circuit court, seems to me to have been perfectly correct.
Another question has been supposed to arise as to the subsequent ratification of the agent’s act by the principal, and whether the court erred in not granting the *56 plaintiffs a new trial. The court left it to the jury to decide, from the evidence, whether the defendants, after they were apprised that' the note in controversy was . 11 , • made for the purpose of paying, or securing the pay-menh for groceries purchased by James Townes from the plaintiffs, ratified the contract ? No objection has been made to this course: the jury found that there was no subsequent ratification; and then the plaintiffs moved for a new trial, which the court refused. Was there error in this ? The bill of exceptions exhibits a summary of the evidence. It states, that the said James Townes the attorney, at a later period, and whilst the note was in possession of the plaintiffs, informed the defendants of the circumstances under which it was made, and by whom it was held; that the defendants made no objection, and did not complain that the attorney had exceeded his authority; that the defendants afterwards procured Joseph Townes to make certain assurances to protect them from the acts done by James under the letter of attorney, and that the note was so provided for. There was no evidence of any assent given, or any actual ratification of the act of the attorney, by the principals-, but the ratification is inferred from their silence. That is too equivocal a circumstance from which to form such a conclusion; and the subsequent conduct of the defendants in standing a suit, shews that they did not understand their failure to object as an actual ratification. The defendants, it is stated, afterwards procured Joseph Townes to make certain assurances. What those assurances were, is not stated; but whatever they might have been, they were only intended to protect the defendants themselves from the acts of their attorney. Then it is said, “ the note was so provided for.” How was it provided for ? This does not appear. It would be a strained inference to say, that it was provided for by the defendants acknowledging that they were bound for its payment, or would *57 pay it. If such ha.d been the fact, it would have been . ' . T . . . . easy to have so stated it. I am oi opinion, that the evidence set out in the bill of exceptions is too vague . . , , and unsatisfactory to authorize the court to say that the jury erred in the verdict which it rendered. I am therefore for affirming the judgment.
Carr, J.
I a,m of opinion, that the construction given by the circuit court, of the power of attorney, was clearly the true one. It certainly did not authorize James Townes to make the note in question, in the name of the defendants, to pay or secure the payment for groceries purchased by him of the plaintiffs. Indeed, I incline to think, that it authorized the drawing but one original note for 3000 dollars, and the renewing that note from time to time, suffering it at no time to rise above the sum of 3000 dollars: and this note of 3000 dollars, having been drawn and discounted, I think the power was functus oficio, so far as related to drawing original notes under it. I think the instruction of the judge, leaving to the jury the fact of subsequent ratification, was also proper; and that the new trial was properly refused.
Cabell and Bkooke, J, concurred.
Tucker, P.
I am of opinion, that the judgment is right upon the merits. But the appellees’ counsel, fearing the result of the argument as to the construction of the letter of attorney, complained of error in the judgment of the court on the demurrer to the defendants’ plea in abatement to the jurisdiction. If judgment should, have been given for the defendants on the demurrer to that plea, it could only have been a judgment in abatement, instead of a judgment in bar of the demand, so that this judgment would, in that aspect, be reversed, and the appellant would have his costs. I *58 am of opinion, however, that the plea in abatement was bad, and was properly overruled. The utmost strictness is required in these pleas, and a general demurrer to one of them, has all the effect of a special demurrer. Now, this plea is vicious, 1. because it was pleaded by attorney, instead of in person; 1 Chitt. Plead. 412. 2 Wms. Saund. 209. b. c. 2ndly, Because it ought to conclude with a prayer si curia cognoscere velit, or respondere non debet, and not quod billa cassetur; 1 Chitt. Plead. 427. 450. 2 Wms. Saund. 209. d. 3rdly, I incline to think it defective in not giving the plaintiff a better writ, by shewing the defendants’ residence, though it is generally true, that in a plea to the jurisdiction of courts of limited jurisdiction, it is only necessary to shew that they ought not to taire cognizance of the cause. 6 East. 600. For it may be, that the defendants’ residence may be unknown to the plaintiff, who should not be turned out of court without the necessary information to enable him to commence his action effectually. Upon the whole, I am satisfied the plea was properly overruled, and a respondeas ouster awarded.
The merits of the case depends upon the construction of the power of attorney; and upon the questions, 1. whether the agent transcended his authority? and 2. whether there has been any subsequent confirmation of the unauthorized act? I concur in the position taken at the bar, that powers of attorney, of this description at least, ought to be construed strictly. It was not a power for the benefit of the maker, but an authority given to the attorney, to draw and subscribe a note for his own accommodation and advantage. Whoever dealt with him under that power, must have been conscious, that he could not bind his principal beyond the express letter of his instructions. It would be strange, indeed, if it were otherwise; if the engagement of one to lend his name and credit to another in a specified manner, or to a specified extent, should be enlarged to embrace en *59 gagements of a different character, upon the pretence 00 ini that they were not more onerous or more hazardous than those which were authorized. That is a matter of which the principal alone had a right to judge. Neither the attorney nor the plaintiffs in this case, have a right to say, that the contract made with them, does not expose the principals to more hazard than the execution of a note according to the express terms of the power. Nor has this court the power to make, or to sustain, a contract for the party, which he did not authorize. The question then is, whether this note is within the authority given to the attorney? The power given is, to subscribe the principals’ names to a negotiable note, for the purpose of getting it discounted at one of several banks which are specified. The note executed was for the amount of a bill for groceries; it was payable to Rutland, and indorsed by the plaintiffs, that they might get it discounted at the U. S. Bank at Fayetteville, where it was made negotiable and payable, but where it never was discounted. The authority was to execute a note for the purpose of raising money; the note executed was not of purpose to raise money for the agent James Townes, but to pay a debt contracted at that time with the plaintiffs for groceries, with an agreement that if it could not be discounted, the plaintiffs were to hold the note as their own property, and as a note binding on the defendants, according to the usual effect of such notes. Thus, the defendants, who had only authorized themselves to be made debtors to one of the banks, are made debtors to an individual. Here, it must be confessed, is a clear and obvious difference in form, between the authority given and the contract made, l's there no difference in substance? Very great, 1 apprehend. Had the note been discounted by either of the specified banks, a renewal might reasonably have been expected at the expiration of the note. The power itself shews, that these renewals were contemplated : *60 the principals, may, very fairly, have calculated upon them, and may thus have anticipated a long credit for the amount for which they became responsible. But by this note, as it was not discounted, they would become bound to pay, at the end of ninety days, the amount of the note. And upon the like principle, the whole 3000 dollars might have been thrown upon them at the end of sixty days, if the agent had borrowed money, or paid debts to that amount, due to an individual. There was, therefore, much reason for specifying, that the names of the principals should be used in raising money by discount at the banks, from which, after a credit once given, a renewed credit might have been reasonably expected; whereas a note executed to an individual, must have been paid at maturity. If an authority to draw at six months, is violated by a draft at sixty days, it may with equal propriety be affirmed, that an authority to get a note discounted on accommodation at bank, is violated by obtaining a loan from, or giving a note to, an individual for goods purchased of him. Without, therefore, considering whether after having once borrowed the 3000 dollars and repaid it in part, the agent had a right again to enlarge the debt (which, to say the least, I think very doubtful) I am very clearly of opinion, that the note, in this case, was not within the scope of the authority.
We come next to inquire as to the confirmation of the agent’s act by the subsequent conduct of the defendants. The judge, very properly, left this matter to the jury, but as all the evidence in the cause is certified, and a new trial was moved for, it still recurs for examination. It is certainly true, as contended at the bar, that the subsequent assent of the principal will ratify even an unauthorized act of an agent, and that acquiescence, after notice, may be evidence of that assent. See Ward v. Evans, 6 Mod. 36. and the other cases cited 4 Bac. Abr. Master and Servant. K. p. 586. *61 And this is particularly true, where a loss may accrue from a delay on the part of the principal to disavow the agency; or where the transaction may turn out a profit ,. . J -, . . , r.. or loss, according to circumstances, and it is therefore unreasonable in the principal, by delaying his election to be bound or discharged, to secure to himself the profit, or avoid the loss, according to the event. Prince v. Clark, 1 Barn. & Cress. 186. 8 Eng. C. L. R. 54. In this case, however, there was nothing of the kind. The transaction was one from which the defendants could derive no profit. Loss was inevitable if they were bound; and as there was no necessity, for the safety of the plaintiffs, to communicate their dissent to the act, I do not think their silence, or their seeking indemnity against possible liability (and that too from a third person), ought to have been considered as such conclusive evidence of their assent, as to justify the court in setting aside the verdict as contrary to evidence. The judgment therefore should be affirmed.
Judgment affirmed.